## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03002-GPG

ROBERT LAFOND,

Plaintiff,

v.

CORRECT CARE SOLUTIONS, LLC, d/b/a Wellpath, LLC;
CORRECTIONAL HEALTHCARE COMPANIES, INC. d/b/a Correctional Healthcare
Management, Inc.;
MONICA ALBERS BSN, RN, CCHP, in her individual capacity;
ESMERALDA ZIEGELMANN, RN, in her individual capacity;
KIMBERLY LNU, RN, in her individual capacity;
JOHN OR JANE DOE NURSES, in his/her individual capacity;

Defendants.

_____

### AMENDED COMPLAINT AND JURY DEMAND
_____

For his Amended Complaint and Jury Demand, Plaintiff Robert Lafond, by and through

his attorney, Jill M. Jackson, of the Law Office of Jill M. Jackson, LLC, alleges as follows:

### INTRODUCTION

This case is brought pursuant to 42 U.S.C. §1983 for deliberate indifference to a serious

medical need in violation of the Fourteenth Amendment to the United States Constitution.

1

**PARTIES**

1.  At all times pertinent hereto, the Plaintiff, Robert Lafond, is a citizen of the United States of America and a resident of the State of Colorado. Mr. Lafond is an inmate currently housed at Englewood Federal Correctional Institution located at 9595 West Quincy Avenue, Littleton, CO 80123.

2.  At all times relevant to the subject matter of this litigation, Mr. Lafond, is a former pre-trial detainee housed at Jefferson County Detention Center ("JCDF") where he needlessly suffered, for five months and eighteen days, from serious pain associated with cervical spinal disease due to the deliberately indifferent treatment he received at JCDF.

3.  Defendant Correct Care Solutions, LLC ("CCS"), d/b/a Wellpath LLC, is a Delaware limited liability company doing business in the State of Colorado. In December 2018, CCS changed its name to Wellpath LLC.[1] Its principal street address is located at 1283 Murfreesboro Road, Suite 500, Nashville, TN 37217. Its registered agent is listed as Corporate Creations Network Inc., with an address of 155 E. Boardwalk #490, Fort Collins, CO 80525. On information and belief, this company contracts with Jefferson County to provide medical services to inmates and detainees at JCDF and supervises and implements such care.

4. Defendant Correctional Healthcare Companies, LLC., d/b/a Correctional Healthcare Management, Inc., is a limited liability company registered in Delaware. Its principal street address is located at 1283 Murfreesboro Pike, Ste 500, Nashville, TN 37217. Its registered agent is listed as Corporate Creations Network Inc., with an address of 155 E. Boardwalk #490, Fort Collins, CO 80525. Defendant Correctional Care Solutions, LLC and Defendant Correctional Healthcare Companies, Inc., are corporate medical care providers related to one another.

---

[1] For the purposes of this complaint Correctional Care Solutions LLC d/b/a Wellpath LLC will be referred to as "CCS."

5. At all times relevant to the subject matter of this litigation, Defendant Monica Alders, BSN, RN, CCHP, is the Health Services Administrator for CCS at JCDF, and is licensed by the State of Colorado as a Registered Nurse. At all times material Defendant Alders was an employee and/or agent of CCS at JCDF and acted under color of state law.

6. At all times relevant to the subject matter of this litigation, Defendant Esmeralda Ziegelmann, RN is licensed by the State of Colorado as a Registered Nurse. At all times material Defendant Ziegelmann was an employee and/or agent of CCS at JCDF and acted under color of state law.

7. At all times relevant to the subject matter of this litigation, Defendant Kimberly LNU, RN is licensed by the State of Colorado as a Registered Nurse. At all times material Defendant Kimberly was an employee and/or agent of CCS at JCDF and acted under color of state law.

8. Upon information and belief, John and Jane Doe healthcare providers were at all times material, licensed by the state of Colorado as nurses and doctors and employees of CCS and/or Correctional Healthcare Companies.

9. Defendant Correctional Care Solutions, LLC, Defendant Correctional Healthcare Companies, Inc., Defendant Monica Albers, BSN, RN, CCHP, Esmeralda Ziegelmann, RN, Kimberly LNU, RN, and John and Jane Doe Nurses are hereinafter collectively referred to as "CCS Defendants."

10. CCS Defendants are proper entities to be sued under 42 U.S.C. §1983 for their deliberately indifferent policies, practices, habits, customs, procedures, training, and supervision of staff, including individual Defendants with respect to the provision of medical care and treatment for inmates with serious medical needs.

11.  At all relevant times, CCS Defendants were acting under color of state law and performing a central function of the State thus making them liable under §1983. All the conduct of the CCS Defendants and its employees and agents is charged to the government, and CCS Defendants were acting jointly with the government actors.

## JURISDICTION AND VENUE

12.  Plaintiff's claims are brought pursuant to 42 U.S.C. § 1983. This Court has jurisdiction of the subject matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343(a)(1).

13.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (2). All of the events alleged herein occurred within the State of Colorado, and upon information and belief, all of the parties were residents of the State at the time of the events giving rise to this complaint.

14.  Plaintiff, Mr. Lafond, has complied with all administrative, jurisdictional, and legal prerequisites to the filing of this action.

## FACTUAL ALLEGATIONS

15.  On January 6, 2018, Mr. Lafond was a pre-trial detainee housed at Clear Creek County jail, when he was rushed to Denver Health Emergency Department for a suspected stroke as he was experiencing sharp pains, weakness, cramping and numbness in his left arm, and severe headaches.

16.  On June 21, 2019, Mr. Lafond was a pre-trial detainee housed at Rio Blanco County jail, when he presented to Meeker Family Health and was seen by Dr. Dorman, for evaluation and treatment, as he was continuing to experience stroke-like symptoms (i.e., stabbing/electric-shock type pains, cramping/tingling in his left arm, and severe headaches). A CT scan of Mr. Lafond's cervical spine revealed bilateral neural foraminal stenosis at C5-C6 due to disc osteophyte

4

complex. Bone spurs had formed inside of his spinal column, causing nerve compression and pain in his arms. Dr. Dorman diagnosed Mr. Lafond with cervical spinal disease with radiculopathy.

17.  That same day, Dr. Dorman recommended further medical evaluation and treatment and prescribed the following: 1. A pillow and double mattress for sleeping and 2. Alternate ice and heat to neck daily. Dr. Dorman's prescribed treatment did not specify a duration, or termination date, as Mr. Lafond's medical condition was ongoing.

18.  On July 31, 2019, Mr. Lafond was transferred to JCDF for medical evaluation and treatment as he was experiencing excruciating pain and associated symptoms caused by his spinal disease. In fact, Mr. Lafond's sentencing hearing, for his criminal case, was postponed to accommodate the transfer to JCDF for medical attention.

19. Upon intake, Mr. Lafond reported to CCS Defendants his medical history, current medical needs, specifically addressing the severe pain and symptoms associated with his spinal disease. He also explained that the use of ice/hot packs on his neck, as prescribed, helped to reduce the pain and swelling. CCS Defendants do not provide inmates with ice/hot packs, but offer an alternative, make-shift, version they refer to as "hot packs." Hot packs are made by soaking paper napkins in hot water and then placing the heated, water-soaked, napkins in a plastic bag. The plastic bag is then tied and handed to the inmate at med-pass.

20. On August 8, 2019, Mr. Lafond was seen by Defendant Albers. In addition to his physical assessment and medical history, he specifically communicated his need for hot packs, prescribed by Dr. Dorman, for pain management—as it provided his only temporary relief from the excruciating pain.

21. Defendant Albers acknowledged receipt of Mr. Lafond's medical records, including all records associated with his spinal disease. Defendant Albers reported that she reviewed medical

records from outside providers, including two correctional facilities, and discussed Mr. Lafond's current medical condition in conjunction with his previous medical history. Defendant Alders also told Mr. Lafond to send a kite if he needed any medical attention.

22. On August 9, 2019, Mr. Lafond was seen, onsite, by Frank Cordova NP, for consultation regarding surgical intervention for his spinal disease. Upon evaluation, NP Cordova reported that Mr. Lafond had decreased range of motion in the neck/thoracic regions, radiculopathy of the cervical region, and stenosis at C-5 C-6 due to osteophyte complex. NP Cordova prescribed Meloxicam for pain. He also recommended further treatment by a specialist for surgical intervention and informed Mr. Lafond that he would provide a referral to a neurosurgeon.

23. On August 13, 2019, Mr. Lafond sent a kite requesting to be seen by medical because the Meloxicam was not working as he was still experiencing debilitating pain and related symptoms. He also indicated that his hot packs were abruptly stopped without explanation.

24. The next day, Mr. Lafond was seen, onsite, by Defendant Ziegelmann. He explained that the Meloxicam was not working and complained of agonizing pain and new symptoms. Specifically, that the pain had progressed to his leg and that the pain level was an eight out of ten on the pain scale. Upon evaluation, Defendant Ziegelmann, noted "muscles spasms" in his chart, and ordered an over-the-counter pain reliever (Acetaminophen/Tylenol) for two days, hot packs, and an ambulatory assistance device (either a cane or crutches). Yet, Mr. Lafond suffered without the use of any ambulatory aids for several months, without explanation, after this order was placed. No further action was taken for Mr. Lafond's pain and symptoms associated with this cervical spinal disease.

25. Shortly thereafter, Mr. Lafond's hot packs were yet again stopped without explanation. Mr. Lafond sent several more kites, to medical, reiterating his pain and worsening symptoms.

26. All requests for medical assistance went unanswered and ignored as Mr. Lafond was forced to continue ingesting Meloxicam—even though he repeatedly communicated to CCS medical staff that this medication wasn't working. He continued requesting medical attention, sending several kites directly to Defendant Albers. This began a pattern of Mr. Lafond's medical requests being flatly ignored or brushed off.

27. On August 28, 2019, Mr. Lafond's hot packs were suddenly cancelled by CCS staff. Defendant Kimberly communicated to Mr. Lafond that after reviewing his chart that he would no longer receive hot packs because there is "no indication of long term use of a hot pack to your neck." Contrary to Defendant Kimberly's baseless comment there is clear evidence, in Mr. Lafond's medical chart, of his continued need for hot packs. Moreover, the hot packs were the only form of pain relief available to Mr. Lafond, especially since the Meloxicam was not working and all his requests to medical were ignored.

28. At some point and without visiting medical, Mr. Lafond's Meloxicam prescription was replaced with a prescription for Cymbalta. However, the Cymbalta caused Mr. Lafond to experience severe nausea and vomiting. He was forced to continue taking the Cymbalta despite the concerning side effects. He also had not been scheduled to see a surgeon as referred by NP Cordova—months earlier. For three months Mr. Lafond sent multiple kites requesting medical attention, expressing debilitating pain and fear of permanent injury. His requests and pleas for help were all ignored. Instead, he was told by CCS nursing staff that he "shouldn't expect to receive medical treatment…because he was in jail."

29. Mr. Lafond's health continued to deteriorate. He struggled to walk normally as he experienced decreased mobility, which caused him to walk with a limp. He still had not received any ambulatory device as ordered by Defendant Ziegelmann a month earlier.

7

30. On September 10, 2019, Mr. Lafond was seen, onsite, by an unknown CCS Physician Assistant for evaluation and treatment for hypertension. He had not requested treatment for hypertension but utilized the visit to address his debilitating pain and worsening symptoms. However, the CCS Physician Assistant indicated that she could not treat Mr. Lafond for his spinal disease due to the lack of medical records in his file to support that diagnosis.

31. Obviously, Mr. Lafond was shocked to learn that all of his medical records, related to his spinal disease, kept in the sole care, custody, and control of CCS Defendants, were now completely missing from his file, without any further explanation. The CCS Physician Assistant informed Mr. Lafond that she would draft orders for pain management, in anticipation of receiving a response from Defendant Albers, regarding his current diagnosis, before officially authorizing the treatment.

32. Unfortunately, the treatment orders were eventually discontinued because Defendant Alders never responded to the CCS Physician Assistant's request for Mr. Lafond's medical history to finalize treatment orders. Defendant Alders continued to ignore all requests and inquiries regarding Mr. Lafond, until she was contacted by Mr. Lafond's attorney, Stephen Laiche, who represented him on the criminal case. Attorney Laiche's office requested an explanation for Mr. Lafond's missing medical records and his denial of medical care and treatment.

33. On September 24, 2019, Mr. Lafond sent a kite, to the watch supervisor, Sgt. Williams requesting help for his continued medical issues. The next day, Sgt. Williams responded with a kite to Mr. Lafond, indicating that he would notify medical that his "problems are getting worse."

34. On October 3, 2019, Defendant Alders finally met with Mr. Lafond and admitted that she had his medical records, in her care, custody, and control, but refused to offer any explanation for the missing records. She also failed to explain her refusal to communicate and/or provide those

8

records to the CCS Physician Assistant seeking to treat Mr. Lafond's condition. That same day, Defendant Albers told Mr. Lafond that she would order a treatment plan to address his chronic pain and associated symptoms. However, no treatment plan was ordered, and his spinal disease continued to go untreated.

35. Mr. Lafond filed three grievances, addressing his denial of medical care, but his grievances were denied as "unfounded." Mr. Lafond also properly appealed the denials of each grievance and those were similarly denied.

36. On October 21, 2019, Mr. Lafond received a medical kite from Defendant Alders informing him that he was scheduled to be seen by a provider for medication and pain treatment. However, this information was untruthful, as no provider was ever scheduled.

37. On November 1, 2019, Mr. Lafond received another medical kite from Defendant Alders informing him that he was scheduled to be seen by an onsite medical doctor for his medication and pain management. Yet, again, this information was untruthful, as no provider was ever scheduled.

38. On November 8, 2019, Mr. Lafond finally received a cane for ambulatory assistance, three months after it was ordered. He was forced to limp around unassisted for several months.

39. On or about January 17, 2020 to January 22, 2019, Mr. Lafond was transported to Mesa County Jail. He was finally seen by an off-site provider, specialist, at South Denver Neurosurgery on January 17, 2020. Upon evaluation and treatment, Anna Lee Jackson, PA-C diagnosed Mr. Lafond with cervical spondylosis and cervical radiculopathy, noting "degenerative arthritis in his neck that is likely causing nerve compression and pain in his left greater than right arm." PA-C Jackson prescribed Neurontin to alleviate nerve pain and inflammation, to immediately replace the

Cymbalta prescription, and questioned why the Cymbalta was not stopped earlier. She also recommended a course of treatment to include joint faucet injections and surgical intervention.

40. On January 22, 2020, Mr. Lafond arrived at Mesa County Jail and did not return to JCDF. Mr. Lafond endured an unbearable state of pain, anxiety, and stress while residing at JCDF. The actions and inactions of CCS Defendants caused Mr. Lafond to experience, debilitating pain and suffering and permeant injuries. He was transferred to JCDF for the purposes of medical evaluation and treatment. Yet, the exact opposite occurred as his continued requests for medical attention were completely ignored.

41. He needlessly suffered at the hands of CCS Defendants, starting with the Meloxicam, prescribed by NP Cordova, upon intake to JCDF. The Meloxicam was arbitrarily replaced with a prescription for Cymbalta, which caused Mr. Lafond to experience severe side effects. CCS defendants knew the Meloxicam and the Cymbalta medications were not working to reduce pain or inflammation and that his symptoms were getting worse. Yet, he was forced to continue taking the pain medications at med-pass. Then CCS Defendants cancelled Mr. Lafond's use of hot packs, contrary to prescribed treatment orders and without any legitimate medical explanation. Mr. Lafond was also forced to suffer, for several months, without the assistance of any ambulatory device. All the while, multiple requests for medical assistance and help were ignored.

42. Months later, when he was finally seen by an onsite healthcare provider, albeit for an unrelated condition, the physician assistant could not issue treatment orders for his spinal disease because his medical records purportedly disappeared for weeks, only to find out that Defendant Albers did, in fact, have his medical records in her care, custody and control the entire time. Fully aware of Mr. Lafond's serious medical condition, Defendant Albers sent him a series of untruthful

10

statements, about upcoming medical appointments, to intentionally mislead Mr. Lafond to believe that help was on the way, when in fact it was not.

43. At the time of the events alleged herein, Defendant CCS was a national company with a disgraceful history of failing to provide constitutionally adequate medical care to inmates. There is an abundance of examples in Colorado, and nationwide, establishing that CCS and the counties that employ them are deliberately indifferent in their policies, customs, and practices with respect to the medical needs, and constitutional rights of inmates.

44. In *Eastman v. Correctional Healthcare Companies, Inc. et al.*, Case No. 1:17-cv-00659-RM- SKC (D. Colo.), Michael Eastman, a detainee at JCDF, similar to Mr. Lafond, suffered from back/spinal pain due to severe chronic cervical spondylosis. Despite numerous requests and kites to medical, Mr. Eastman, never received any treatment while housed at JCDF and, like Mr. Lafond, was misled to believe treatment plans were ordered. CCS medical staff failed to provide access to timely medical treatment by qualified medical providers, nurses practice outside the scope of their licenses, and acted with deliberate indifference by ignoring repeated requests for an appointment with a neurologist, causing Mr. Eastman pain and suffering and permanent injuries.

45. In *McGill v. Correctional Healthcare Companies, Inc. et al.*, Case No. 1:13-cv-01080-RBJ-BNB (D. Colo.), Kenneth McGill, suffered a stroke at JCDF and Defendant CCS employees acting with deliberate indifference, failed to take Mr. McGill to a hospital to receive necessary emergency medical care, and that CCS tolerated and encouraged such a pattern and practice to save money because of its contract with JCDF.

46. Similarly, in *Delgado et al v. Correct Care Solutions*, *LLC et al.*, Case No. 1:15-cv-02718-PAB-STV (D. Colo.), Jennifer Lobato, a detainee housed in JCDF died from a withdrawal related electrolyte imbalance. CCS Defendants failed to provide timely medical care and treatment.

It was alleged that CCS Defendants have a financial incentive because of their contractual relationship with Jefferson County to continue to foster an environment of skepticism toward inmate complaints and a reckless wait and see approach to inmate care.

47.  In *Estate of Thomas Beauford et al v. Mesa County, Colorado et al.*, Case No. 1:16-cv-00851-DDD-GPG (D. Colo.), Thomas Beauford, a detainee housed in Mesa County Detention Facility died from a series of epileptic seizures. CCS staff failed to provide Mr. Beauford's prescription medications to prevent seizures and failed to timely respond with medical attention after observing him experience multiple seizures in his cell.

48.  In *Estate of Bruce R. Howard, et al. v. County of El Paso, Colorado et al.*, Case No. 1:10-cv-02740-CMA-MEH (D. Colo.), Bruce Howard died of cardiac arrhythmia after CCS staff denied him his heart pills and ignored his repeated pleas for medical assistance. He received no treatment despite his visible shakiness and assertions that he was hallucinating.

49. In 2009, an Oklahoma Department of Health investigation indicated that such deficiencies continued unabated by CCS/CHC related companies despite the abundant notice of the same from National Commission on Correctional Health Care ("NCCHC") and Department of Justice.

50. In 2010, during a NCCHC audit, high-level employees of CHC attempted to fraudulently change medical records to give the appearance of compliance. NCCHS found deficient care, deficient investigation into deaths, and a lack of timely diagnostic and specialty services. Even after this audit, CHC did not take the corrective measures necessary to alleviate the obvious and substantial risks to inmate health. High-level CCS employees repeatedly brought to CCS's attention to the many serious deficiencies, including chronic failures to triage medical

12

requests, falsification of records, and refusals to treat inmates with life-threatening conditions, but the corporation failed to make any changes to the way CCS-related companies operated.

51. In 2011, U.S. Immigration and Customs Enforcement and the U.S. Department of Homeland Security's Office of Civil Rights and Civil Liberties ("CRCL") also conducted a review of the medical care provided by CCS and related companies and reported that: "CRCL found a prevailing attitude among clinic staff of indifference...."; "Nurses are undertrained. Not documenting or evaluating patients properly."

52. A common thread is that CCS ignores obvious signs and symptoms of serious medical needs of inmates, denying access to necessary medical care.

53. Here, CCS defendants exhibited a similar pattern and practice of deliberate indifference to Mr. Lafond's known and serious medical needs. CCS failed to adequately train employees in meeting the serious emergent medical needs of inmates resulting in needless delays and failures to provide medical care. This was a foreseeable and predictable result of CCS Defendants acts and omissions.

## FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983
### Fourteenth Amendment Violation- Deliberate Indifference to Serious Medical Needs
### (Against all Defendants)

54. Mr. Lafond incorporates each paragraph of the Complaint as if restated fully therein.

55. At all times, relevant to the allegations in this Complaint, Defendants acted under color of state law.

56. Mr. Lafond was a citizen of Colorado and all the individual Defendants are persons under 42 U.S.C. §1983.

57.  Mr. Lafond had a clearly established right under the Fourteenth Amendment to the United States Constitution to be free from deliberate indifference to his known serious medical needs.

58.  Each individual Defendant knew or should have known that deliberately disregarding Plaintiff's repeated, unambiguous assertions posed a substantial risk of serious harm to Plaintiff CCS Defendants deliberately disregarded that obvious, substantial risk, and failed to take reasonable measures to protect Mr. Lafond from that risk.

59.  At all times relevant to the allegations in this Complaint, each individual Defendant knew of and disregarded the excessive risks associated with Mr. Lafond's serious and rapidly worsening medical condition.

60. Nevertheless, with deliberate indifference to Mr. Lafond's constitutional right to adequate medical care, as provided by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, CCS Defendants knowingly failed to examine, treat, and/or care for Mr. Lafond's worsening condition. They did so despite their knowledge of Mr. Lafond's serious medical needs, thereby causing him to suffer in excruciating pain and causing him to fear for his immediate health. Therefore, Defendants knew or were aware that Mr. Lafond faced a substantial risk of harm from persistent pain and disregarded this excessive risk by failing to take timely measures to reduce it. All Defendants violated Mr. Lafond's clearly established constitutional rights.

61.  When Mr. Lafond alerted the individual Defendants to his need for emergent medical assistance, Defendant's acted with deliberate indifference to Mr. Lafond's clear need for medical attention and his constitutional rights by failing to obtain timely and proper medical treatment for him.

14

62. All the deliberately indifferent acts of each individual Defendant were performed within the scope of their official duties and employment.

63. The acts or omissions of each individual Defendant were the legal and proximate cause of Mr. Lafond's extreme pain and suffering for over five months while housed at JCDF, in the care of CCS Defendants.

64. The CCS has a policy and practice of unreasonable delay in emergent medical treatment of inmates at the JCDF.

65. The policy and practice of CCS are the moving force behind the violation of Mr. Lafond's constitutional rights.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Robert Lafond, respectfully requests that this Court enter judgment in his favor and against Defendants and award him the following:

a) Compensatory damages, including, but not limited to, physical pain and suffering, injury, deprivation of privileges, retaliatory treatment, and mental and emotional harm;

b) Nominal damages as provided by law; and

c) Pre- and post-judgment interest, costs and expert witness fees, and such other relief as the Court deems just and proper.

**PLAINTIFF REQUESTS A JURY TRIAL ON ALL MATTERS SO TRIABLE**.

Respectfully submitted this 25th day of August 2020,

*S/ Jill M Jackson*
Jill M Jackson #44517
Law Office of Jill M. Jackson LLC.
3801 E Florida Avenue, Ste 400
Denver, CO 80210
Telephone: (303) 818-7209
E-mail: jill@jilljacksonlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of August 2020, a true and correct copy of the foregoing **AMENDED COMPLAINT AND JURY DEMAND** was served electronically, via CM/ECF, to the following:

Jared R. Ellis
Gillian Dale
Hall & Evans, LLC
1001 Seventeenth Street, Suite 300
Denver, CO 8020
Email: ellisj@hallevans.com
Email: daleg@hallevans.com
 #303-628-3485

_S/ Jill M Jackson_
Jill M Jackson #44517
Law Office of Jill M. Jackson LLC.
3801 E Florida Avenue, Ste 400
Denver, CO 80210
Telephone: (303) 818-7209
E-mail: jill@jilljacksonlaw.com

16