IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLORADO
**Judge Daniel D. Domenico**

Civil Action No. 1:19-cv-03002-DDD-SKC

ROBERT LAFOND,

     Plaintiff,

v.

CORRECT CARE SOLUTIONS, LLC;
CORRECTIONAL HEALTHCARE COMPANIES, INC.;
MONICA ALBERS, in her individual capacity;
ESMERALDA ZIEGELMANN, in her individual capacity; and
KIMBERLY LNU, in her individual capacity;

     Defendants.

---

## ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS

---

This case arises out of the medical care, or alleged lack thereof, provided to pretrial detainee Robert Lafond while he was housed at the Jefferson County Detention Facility. Mr. Lafond, who suffers from cervical spinal disease, is suing several defendants whom he alleges were involved, including Correctional Healthcare Companies and Correct Care Solutions. (Doc. 58 at 2.) He brings one Section 1983 claim for deliberate indifference to serious medical needs in violation of the Fourteenth Amendment against all the defendants. (*Id.* at 13.) The two companies have moved under Rule 12(b)(6) to dismiss the claims against them. (Doc. 61.) The motion is granted as to Correctional Healthcare and is denied as to Correct Care.

1

## BACKGROUND

The following allegations are taken from Mr. Lafond's Amended Complaint (Doc. 58) and are treated as true for purposes of assessing the motion to dismiss. *See Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013).

In June 2019, Mr. Lafond was diagnosed with cervical spinal disease with radiculopathy. (Doc. 58 at 4.) Shortly thereafter he was transferred to Jefferson County Detention Facility where he reported to staff, including Defendant Monica Albers, his medical history and current medical needs. (*Id.* at 5.) An onsite nurse practitioner prescribed Mr. Lafond pain medication and recommended back surgery. (*Id.* at 6.) After a follow-up appointment at which an order for ambulatory aids was placed, Mr. Lafond's medical assistance requests were ignored. (*Id.* at 7.) In August 2019, Mr. Lafond's access to hot packs, which he used to curb his pain, was cancelled. (*Id.*) Eventually his prescription was switched to a new medication, but the replacement made Mr. Lafond severely nauseous. (*Id.*) When Mr. Lafond again asked for help, he was told that he "shouldn't expect to receive medical treatment . . . because he was in jail." (*Id.*) The following month, Mr. Lafond was informed that his spinal disease medical records were not in his file, and thus he could not be treated for his spinal condition. (*Id.* at 8.) As Mr. Lafond's medical conditions continued to deteriorate, he submitted another request for medical attention. (*Id.*) Mr. Lafond met with Ms. Albers, and she admitted to having his complete medical file but offered no explanation for why it appeared missing to other medical personnel. (*Id.*) Ms. Albers told Mr. Lafond that she would order a treatment plan, but the order was never placed. (*Id.* at 9.) In November 2019, Mr. Lafond finally received a cane for assistance with walking. (*Id.*)

Following several months of complaints and medical care requests, Mr. Lafond saw an off-site neurosurgery specialist in January 2020. (*Id.*) The specialist diagnosed Mr. Lafond with cervical spondylosis and cervical radiculopathy, noting "degenerative arthritis in his neck that is likely causing nerve compression and pain in his left greater than right arm" and recommended joint faucet injections and surgical intervention. (*Id.* at 9-10.) The specialist also wrote a new prescription for Mr. Lafond and expressed concern as to why the previous prescription, which had made Mr. Lafond sick, was not stopped earlier. (*Id.* at 9-10.) Mr. Lafond was then transferred to another facility. (*Id.* at 10.)

## LEGAL STANDARDS

In addressing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court's role is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). In doing so, the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (internal quotation marks omitted). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). A court

3

will "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Ultimately, at this stage, the well-pleaded facts underlying a plaintiff's allegations must articulate a viable legal claim. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

## ANALYSIS

### I.   Status of Correctional Healthcare

To tidy up the issues a bit, it is worth first addressing Correctional Healthcare's status. Correct Care's motion states that its arguments for dismissal also apply to Correctional Healthcare. (Doc. 61 at 1 n.1.) The motion notes that Correctional Healthcare has not been served and that claims against it should also be dismissed because Mr. Lafond does not allege "that anyone from CHC provided treatment to him while incarcerated, and his inclusion of CHC is premised solely on the assertion that CCS and CHC 'are corporate medical care providers related to one another.'" (Doc. 61 at 1 n.1, quoting Doc. 58 at 1.) The lack of service alone would likely warrant dismissal, but the failure to allege any injuries traceable to Correctional Healthcare does as well. *See Bd. of Cnty. Comm'rs. of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997) ("The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged.").

Mr. Lafond points to *Estate of Lobato by and through Montoya v. Correct Care Sols., LLC*, where the court explained that "Correctional Healthcare Companies, Inc. ('CHC') was operating in Colorado as a provider of jail medical services through 2014, when it was merged with or

4

was acquired by Correct Care Solutions, LLC ('CCS'). CCS and CHC hold themselves out as a combined company." No. 15-cv-02718-PAB-STV, 2017 WL 1197295, *1 n2 (D. Colo. Mar. 31, 2017).

But they do appear still to be legally distinct entities, and *Lobato* notes that Correctional Healthcare provided services through 2014, while the facts of this case occurred in 2018. Correctional Healthcare, the entity named as a defendant, therefore cannot be liable for injuries allegedly caused by another entity and its employees.  Mr. Lafond may hope to keep Correctional Healthcare in the case so that prior instances of its allegedly similar substandard care can be more readily presented to the Court. And the Court agrees that the two companies' merger and apparently close relationship, as described in *Lobato*, does make both companies' historic record relevant here, as the discussion below shows. Correctional Healthcare's prior practices may have "merged" along with its business, into Correct Care's such that they can be considered as part of Correct Care's practices and customs. But that neither requires nor justifies naming Correctional Healthcare as a defendant as to later actions taken by Correct Care's employees. Because Correctional Healthcare has apparently never been served and because there are no allegations that Correctional Healthcare or any of its agents took any of the actions Mr. Lafond complains of, claims against it must be dismissed. *See Bryan Cnty.*, 520 U.S. at 404.

## II.    Correct Care Liability

Mr. Lafond claims Correct Care was deliberately indifferent to his serious medical needs in violation of the Fourteenth Amendment. (Doc. 58 at 13.)  Pretrial detainees, like Mr. Lafond, are entitled to the same degree of protection regarding medical attention under the Fourteenth Amendment as that afforded convicted inmates under the Eighth

Amendment. *Martin v. Bd. of Cnty. Comm'rs of Cnty. of Pueblo*, 909 F.2d 402, 406 (10th Cir. 1990). The Fourteenth Amendment's Due Process Clause, therefore, provides a cause of action for injuries caused by prison officials' "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks omitted). A claim of deliberate indifference to serious medical needs includes both an objective and a subjective component. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). The objective prong examines whether the deprivation of care at issue was "'sufficiently serious' to be cognizable under the Cruel and Unusual Punishment Clause." *Id.* at 753. "The subjective prong examines the state of mind of the defendant, asking whether 'the official kn[e]w of and disregard[ed] an excessive risk to inmate health or safety.'" *Al-Turki v. Robinson*, 762 F.3d 1188, 1192 (10th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Correct Care does not contend that Mr. Lafond has failed to sufficiently allege a plausible Fourteenth Amendment deliberate indifference to medical needs violation. Instead, its motion is based on *Monell* municipal liability.

Though Correct Care is a private, not governmental, entity, Mr. Lafond's Section 1983 claim against it is governed by the doctrine initially adopted by the Supreme Court in *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2004) ("caselaw from this and other circuits has extended the *Monell* doctrine to private § 1983 defendants."); *see also Estate of Beauford v. Mesa Cnty.* No. 21-1010 (10th Cir. May 25, 2022).

Such an entity cannot be liable under *Monell* "solely because it employs a tortfeasor—or in other words a municipality cannot be held liable under a *respondeat superior* theory." 436 U.S. at 691. Correct Care can only be held responsible for its own malfeasance, not an employee's. To

6

state a claim against Correct Care, then, Mr. Lafond must sufficiently allege "(1) the existence of an official policy or custom; (2) a direct causal link between the policy or custom and the constitutional injury; and (3) that the defendant established the policy with the deliberate indifference to an almost inevitable constitutional injury." *Dawson v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Colorado*, 732 F. App'x 624, 628 (10th Cir. 2018).

A municipal policy or custom may be "(1) an officially promulgated policy; (2) an informal custom amounting to a widespread practice; (3) the decisions of employees with final policymaking authority; (4) the ratification by final policymakers of the decisions of their subordinates; or (5) the failure to adequately train or supervise employees." *Estate of Martinez v. Taylor*, 176 F.Supp. 1217, 1230 (D. Colo. 2016) (citing *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010)). Mr. Lafond argues two of these exist here. First, he contends that Correct Care has "a policy and practice of unreasonable delay in emergent medical treatment of inmates at the [Jefferson County Detention Facility]." (Doc. 58 at 15.) Second, he alleges that Correct Care "failed to adequately train employees in meeting the serious emergent medical needs of inmates resulting in needless delays and failure to provide medical care." (*Id.* at 13.)

### A. Informal Custom

Mr. Lafond's allegations are sufficient at this early stage to allow for inference that Correct Care had a custom or widespread practice of unreasonable delay in providing medical treatment. They are also sufficient to suggest he may be able to show that custom was a cause of his claimed injuries, and that Correct Care was deliberately indifferent to the likelihood that such injuries would result.

7

An informal custom is one "amounting to widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute custom or usage with force of law." *Bryson*, 627 F.3d at 788. The custom in question must be "maintained with deliberate indifference to an almost inevitable constitutional injury." *Id.* at 769. Deliberate indifference is "a stringent standard of fault." *Bryan Cnty.*, 520 U.S. at 410.  It requires a showing that the municipality acted consciously or deliberately in disregarding the risk of harm. *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (1998). "In most instances, notice can be established by proving the existence of a pattern of tortious conduct." *Bryson*, 627 F.3d at 789.

In support of these allegations, Mr. Lafond provides a combination of previous cases, investigations, and assertions:

- In *Eastman v. Correctional Healthcare Cos., Inc.*, the plaintiff, a detainee at Jefferson County who suffered from back and spinal pain, alleged that Correct Care failed to provide timely access to medical treatment. 1:17-cv-00659-RM-SKC (D. Colo. 2017). (Doc. 58 at 11.)

- In *Delgado et al. v. Correct Care Sols., LLC et al.*, a detainee at Jefferson County died from a withdrawal relating to an electrolyte imbalance and brought a lawsuit against Correct Care, alleging that its employees failed to provide timely medical care. 1:15-cv-02718-PAB-STV (D. Colo. 2015). (*Id.*)

- In *McGill v. Correctional Healthcare Cos., LLC et al.*, when the plaintiff detainee had a stroke at Jefferson County, Correctional Healthcare employees did not take him to the hospital, and he brought a lawsuit alleging that they failed to provide

him with timely medical care. 1:13-cv-01080-RBJ-BNB (D. Colo. 2013). (*Id.*)

- In *Estate of Bruce R. Howard, et al. v. Cnty. of El Paso, Colorado et al.*, a detainee in El Paso County, Colorado died of cardiac arrhythmia and alleged that Correctional Healthcare employees failed to provide him his heart pills and ignored his requests for medical assistance. 1:10-cv-02740-CMA-MEH (D. Colo. 2010). (*Id.* at 12.)

- In *Estate of Beauford et al. v. Mesa County., Colorado et al.*, a detainee in the Mesa County Detention Facility suffered a fatal epileptic seizure and brought a lawsuit against Mesa County, several deputies, and Correct Care and Correctional Healthcare. 1:16-cv-00851-DDD-GPG (D. Colo 2016). (*Id.*)

- A 2009 Oklahoma Department of Health investigation indicated continued deficiencies by Correct Care and Correctional Health despite notice from the National Commission on Correctional Health Care and the Department of Justice. (*Id.*)

- A 2010 National Commission on Correctional Health audit of Correctional Healthcare found deficient care, deficient investigation into death, and a lack of timely diagnostic and specialty services. (*Id.* at 12-13.)

- A 2011 United States Immigration and Customs Enforcement and United States Department of Homeland Security's Office of Civil Rights and Civil Liberties review of Correctional Care's medical care uncovered a "prevailing attitude among clinic staff of indifference…."; "Nurses are undertrained. Not documenting or evaluating patients properly." (*Id.* at 13.)

9

- "The actions and inactions of CCS Defendants caused Mr. Lafond to experience debilitating pain and suffering and permanent injuries." (*Id.* at 10.)

- Mr. Lafond continuously requested medical assistance over several months for the change in his medication and cancellation of his hot packs but was ignored. (*Id.*)

- "A common thread is that CCS ignores obvious signs and symptoms of serious medical needs of inmates, denying access to necessary medical care." (*Id.* at 13.)

Mr. Lafond provides five case examples to demonstrate "a pattern of and custom of unreasonable delay in emergent medical treatment of inmates at [Jefferson County]." (Doc. 58 at 15.) Not all of these cases are necessarily powerful evidence of such a widespread practice or deliberate indifference, particularly given the extent of Correct Care's activities; some are old, some are from distant facilities, some resulted in stipulated dismissals, some involve Correctional Healthcare[1], and some seem not to involve particularly similar facts. The Tenth Circuit in *Beauford*, for example, just affirmed that while a prison guard might be

---

[1]    The Court notes that two cases provided by Mr. Lafond, *McGill* and *Delgado*, only list Correctional Healthcare as a defendant, not Correct Care. *McGill*, No. 13-cv-01080-RBJ-BNB (Doc. 1 at 6); *Delgado*, No. 15-cv-02718-PAB-STV (Doc. 1 at 11). While Correctional Healthcare has been dismissed because none of the allegations about Mr. Lafond involve it, these cases may still be relevant because it appears that Correctional Healthcare and Correct Care were previously merged. *See Lobato*, 2017 WL 1197295 at *1 n.2. How the two companies interacted during and after the merger are facts not currently before the Court. The development of these and other relevant facts may well indicate that cases involving Correctional Healthcare do not support Mr. Lafond's claim. But at this point, it would be improper for the Court to get involved in such fact disputes.

liable, Correct Care was not liable for deliberate indifference to a plaintiff's medical needs where the plaintiff died from a seizure in his cell. No. 21-1010, slip op. at *41.

But they are also not completely irrelevant. And at least three of the cases—*Eastman*, *McGill*, and *Delgado*—involved allegations of failing to provide timely access to medical treatment. *Eastman*, No. 1:17-cv-00659-RM-SKC; *Delgado*, No. 15-cv-02718-PAB-STV; *McGill*, No. 13-cv-01080-RBJ-BNB. The plaintiff in *Eastman*, like Mr. Lafond, was struggling with back and spinal pain and alleged that Correct Care medical staff failed to respond to his requests for medical treatment and never provided him with medical treatment while he was in its care. *Eastman*, No. 1:17-cv-00659-RM-SKC. *Eastman* resulted in a stipulated dismissal. *Id.* (Doc. 90.) Similarly, in *Delgado*, which resulted in a stipulated dismissal, the plaintiff alleged that Correct Care employees failed to provide medical care while plaintiff was experiencing withdrawal. No. 15-cv-02718-PAB-STV. *McGill,* a case where the plaintiff alleged deliberate indifference when staff failed to take him to the hospital after a stroke, resulted in a jury verdict finding that Correctional Healthcare maintained an unconstitutional policy. No. 13-cv-01080-EBJ-BNB (Doc. 185 1-2). And in *Howard*, which ended in a stipulated dismissal, the plaintiff alleged that Correctional Healthcare employees refused to give him his heart pill and ignored his requests for medical assistance. No. 10-cv-02740-CMA-MEH (Doc. 86). The outcome of these cases suggests that after discovery, they may not actually support Mr. Lafond's case much, if at all. But at this motion to dismiss stage, where the Court is not weighing the evidence but simply assessing whether Mr. Lafond has submitted enough to suggest that his claims are *plausible*, they are enough.

While only three of these occurred at the same facility and *Beauford* has an outcome that does not necessarily support Mr. Lafond's position, these alone might be sufficient to show a widespread practice and deliberate indifference at this stage. *Estate of Henley v. Westminster*, 2020 WL 8408474, at *4 (D. Colo. Dec. 22, 2020) ("Applying the reasoning articulated in *Valverde,* the Court finds Plaintiff's conclusory allegation, taken with the three examples, is sufficient to plausibly allege Westminster had constructive notice that its failure to train its officers was likely to result in harm to the public and that it was deliberately indifferent when it ignored the risk and failed to implement appropriate training."); *Estate of Valverde v. Dodge*, 2017 WL 3550282, at *4 (D. Colo. Aug. 17, 2017) ("Remembering that the focus of the Motion to Dismiss is on the sufficiency of the allegations to state a claim, the Court reads the conclusory statement together with the examples treating the specific examples as true. The three examples include different individuals and span a significant time period. The outcome of any of the lawsuits is not relevant to the issue at hand. Taking the allegations as true, they could plausibly demonstrate the existence of an informal custom or practice that resulted in use of excessive force, and therefore the allegations are sufficient to state a *Monell* claim.").

In addition to the other cases, evidence other than similar past cases may also be considered to determine whether a plaintiff has sufficiently alleged facts such that a court could conclude a defendant maintained a custom with deliberate indifference. *See Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 696 (10th Cir. 1988) (explaining that statistical evidence may be a relevant consideration); *Montel v. City of Springfield*, 386 F. Supp. 3d 67, 79 n.9 (D. Mass. 2019) (stating that numerous studies indicating the prevalent issue of mental illness and suicide that are

available to the municipality may be enough to amount to deliberate in-difference). Even though the three investigations provided by Mr. Lafond are not specific to Jefferson County, at least two of them are nationwide and indicate deficiencies throughout the Correct Care organization. Mr. Lafond also offers evidence of his own factual pattern of medical requests being ignored, including sending numerous medical requests to adjust his medication and challenge the denial of access to hot packs. (Doc. 58 at 7.) This sort of evidence may also be a relevant consideration. *See Watson*, 857 F.2d at 696 (explaining that "plaintiff's version of events regarding her own situation, if believed, may demonstrate a pattern of deliberate indifference").

The combination of the previous case examples, three investigations, own factual pattern allegations, and statements are sufficient, at this early stage, to suggest Mr. Lafond might be able to prove his allegations that Correct Care's custom of inadequate care was "maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider*, 717 F.3d at 769; *See Connick*, 563 U.S. at 62; *Quintana v. Santa Fe Cnty. Bd. of C'mmrs*, 973 F.3d 1022, 1034 (10th Cir. 2020).

"To establish the causation element, the challenged policy or practice must be closely related to the violation of the plaintiff's federally protected right." *Schneider*, 717 F.3d at 770. "This requirement is satisfied if the plaintiff shows that 'the municipality was the "moving force" behind the injury alleged.'" *Id.* (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). Mr. Lafond must "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* (quoting *Brown*, 520 U.S. at 404).

If he does show such a custom, it is not hard for Mr. Lafond to "demonstrate a direct causal link between the municipal action and the

13

deprivation of federal rights." *Id.* (quoting *Brown*, 520 U.S. at 404). His allegations are that Correct Care, consistent with this customary policy of delaying or ignoring certain medical needs, led its employees to refuse him needed treatment causing him physical and other harm. Mr. Lafond, for example, asserts that he continuously requested medical assistance over several months but was ignored and "[t]he actions and inactions of CCS Defendants caused Mr. Lafond to experience debilitating pain and suffering and permanent injuries." (*Id.* at 10.) The allegations thus suggest that Correct Care's alleged custom of unreasonable delay to medical needs in emergent medical situations caused a violation of Mr. Lafond's Fourteenth Amendment rights. *See Schneider*, 717 F.3d at 770.

### B. Fourteenth Amendment Deliberate Indifference

Even though Mr. Lafond has met his burden at this stage to show an informal custom for the purpose of *Monell* liability, he still must state a plausible claim that Correct Care was deliberately indifferent to his serious medical needs in violation of the Fourteenth Amendment. (*See* Doc. 58 at 13.) Pretrial detainees, like Mr. Lafond, are entitled to the same degree of protection regarding medical attention under the Fourteenth Amendment as that afforded convicted inmates under the Eighth Amendment. *Martin v. Bd. of Cnty. Comm'rs of Cnty. of Pueblo*, 909 F.2d 402, 406 (10th Cir. 1990). The Fourteenth Amendment's Due Process Clause, therefore, provides a cause of action for injuries caused by prison officials' "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks omitted). A claim of deliberate indifference to serious medical needs includes both an objective and a subjective component. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). The objective prong examines whether

14

the deprivation of care at issue was "'sufficiently serious' to be cognizable under the Cruel and Unusual Punishment Clause." *Id.* at 753. "The subjective prong examines the state of mind of the defendant, asking whether 'the official kn[e]w of and disregard[ed] an excessive risk to inmate health or safety.'" *Al-Turki v. Robinson*, 762 F.3d 1188, 1192 (10th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Mr. Lafond's factual allegations are sufficient to allow "the court to draw that reasonable inference that [Correct Care] is liable for [violating Mr. Lafond's Fourteenth Amendment rights]." *Ashcroft*, 556 U.S. at 678. Mr. Lafond's allegations—repeatedly ignoring and denying requests for medical attention related to medication and needed procedures while he was suffering from documented cervical spinal disease with radiculopathy—is "sufficiently serious" to satisfy the deliberate indifference objective prong on a motion to dismiss. *See Mata*, 427 F.3d at 751. And, given the considerable overlap between the above *Monell* custom analysis and the requirements of the subjective prong of Fourteenth Amendment deliberate indifference, there is "enough factual matter (taken as true) to suggest' that [Mr. Lafond] is entitled to relief." *Robbins*, 519 F.3d at 1247 (quoting Twombly, 550 U.S. at 555); *see Al-Turki*, 762 F.3d at 1192.

At this stage, of course, it cannot be determined from the face of the complaint whether Mr. Lafond will be able to substantiate his claim against Correct Care. But "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009). If there is no more evidence to support the claim, Correct Care may well prevail at trial or perhaps even at summary judgment. But given the "low bar for surviving a motion to dismiss," Mr. Lafond has alleged enough to explore his claims in the discovery process. *Id.*

15

### C. Failure to Train

The failure to train theory, on the other hand, is insufficiently pled because Mr. Lafond provides only conclusory statements with no factual support. *See Hare v. Donahoe*, 608 F. App'x 627, 629 (10th Cir. 2015) (under Rule 12(b)(6), "disregard conclusory statements and look only to whether the remaining factual allegations plausibly suggest the defendant is liable.").

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). A municipality can be liable where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390. The focus of "failure-to-train liability is concerned with the substance of the training . . . ." *Connick v. Thompson*, 563 U.S. 51, 68 (2011). "In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." *City of Canton*, 489 U.S. 390-91. At this stage, courts have dismissed claims based on the failure to train theory because plaintiffs did not allege "how the individual defendants were trained, who they were trained by, or why their training was deficient." *Erickson v. City of Lakewood,* 489 F. Supp. 3d 1192, 1208 (D. Colo. 2020).

Mr. Lafond asserts that, similar to one of the investigations that found that Correct Care had undertrained staff, Correct Care "failed to adequately train employees in meeting the serious emergent medical

16

needs of inmates resulting in needless delays and failures to provide medical care." (Doc. 58 at 13.) This is not enough to support the conclusory assertion that these injuries were caused by a failure to train. Mr. Lafond does not provide any additional details of what training occurred, how it was deficient, or who provided it. *See See Sanchez v. Littleton*, 491 F. Supp.3d 904, 922 (D. Colo. 2020) (dismissing municipal liability claim where "plaintiffs d[id] not set forth any facts concerning how the individual defendants were trained, who they were trained by, or why their training was deficient"); *Rehberg v. Pueblo*, 1:10-cv-00261-LTB-KLM, 2012 WL 1326575, at *5 (D. Colo. Apr. 17, 2012) (concluding that failure to train claim was insufficient because plaintiffs did not allege "any facts regarding the officers' training or supervision—when it occurred, who conducted it, or how it was deficient"). Nor are there any factual allegations addressing the substance of such training in relation to responding to medical requests and needs. *City of Canton*, 489 U.S. 390-91. A single prior investigation is not enough to support Mr. Lafond's conclusory allegations that his injuries are attributable to Correct Care's failure to adequately train its staff. *See Sexton v. City of Colorado Springs*, 530 F. Supp. 1044, 1070-71 (D. Colo. 2021) ("The Court finds *Valverde* distinguishable because plaintiff has only alleged two similar incidents in this case and in *Valverde* all three incidents alleged in the complaint had taken place in the prior two years."). That claim is dismissed.

## CONCLUSION

Defendant Correct Care Solutions and Correctional Healthcare Companies's motion to dismiss (Doc. 61) is GRANTED IN PART and DENIED IN PART.

Dated: June 24, 2022.            BY THE COURT:

_____
Daniel D. Domenico
United States District Judge

18